In the United States District Court
for the Southern District of Texas
Houston Division

| | |
|---|---|
| Franz Bunnel, individually and on behalf of all others similarly situated, | |
| plaintiff, | Cause No. _____ |
| v. | Class Action Complaint |
| Rocket Mortgage, LLC and Charles Schwab Bank SSB, | |
| defendant. | |

### ORIGINAL COMPLAINT

Franz Bunnell, individually and on behalf of all others similarly situated, sues Rocket Mortgage, LLC, formerly "Quicken Loan, LLC" ("Rocket") and Charles Schwab Bank SSB ("Schwab") for violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, *et seq*.

This action seeks statutory damages, attorneys' fees, and costs on behalf of a class of consumers who received false or misleading disclosures from Rocket regarding mortgage assumability.

## A. Jurisdiction and venue

1. This Court has federal question jurisdiction under 28 U.S.C. § 1331 because this action arises under TILA, 15 U.S.C. § 1601 *et seq*.

2.  Jurisdiction is also proper under 15 U.S.C. § 1640(e), which expressly allows actions for TILA violations in federal district courts.

3.  Venue is proper in the Southern District of Texas under 28 U.S.C. § 1391(b) because Rocket and Schwab conduct business within this district, and a substantial part of the events giving rise to the claims occurred in this district.

## B. Parties

### 1. The defendants

4.  Rocket Mortgage, LLC ("Rocket") is a Michigan limited liability company whose principal place of business is 1050 Woodward Avenue, Detroit, MI 48226-1906. Rocket Mortgage, LLC originates mortgage loans for Charles Schwab Bank, SSB ("Schwab"). Rocket Mortgage, LLC, formerly Quicken Loans, LLC, can be served through its registered agent, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201.

5.  Charles Schwab Bank ("Schwab") is a Texas-chartered state savings bank with its principal office at 3000 Schwab Way, Westlake, Texas 76262. Schwab is a member of the Federal Reserve System and is regulated by the Federal Reserve. As a subsidiary of The Charles Schwab Corporation, a Delaware corporation, Schwab engages in various banking activities, including buying and servicing residential mortgage loans. Charles Schwab Bank, SSB

can be served through its registered agent CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201.

**2.  The plaintiff**

6.   Franz D. Bunnell resides in The Woodlands, Texas. He, his spouse, and his son, Zack Bunnell, obtained a mortgage loan from Rocket Mortgage, LLC, secured by Zack's property in Houston, Texas, with Franz and Zack signing the mortgage. On November 15, 2024, Zack assigned all his claims to Franz through an Assignment of Cause of Action, transferring all rights to pursue, prosecute, settle, or dispose of the claims against Rocket and Schwab, including the right to recover damages or other relief. Franz sues on his behalf and as assignee of his son's claims.

**C.  Facts**

7.   On or about April 1, 2021, Franz Bunnell contacted Quicken Loans (then Rocket Mortgage) to refinance a home for his son, Zachary Alexander Bunnell, based on a referral from his contact at Charles Schwab.

8.   Since 2012, Rocket and Schwab have partnered with Rocket Mortgage to provide home lending for Charles Schwab's clients.

9.   Rocket had to disclose whether the loan was assumable and, if so, under what conditions.

10. Rocket gave both Franz Bunnell and Zachary Bunnell a Loan Estimate ("LE") stating that the loan was "assumable." Then, Rocket also issued a Closing Disclosure ("CD") that repeated that the loan was "assumable."

11. The word of the disclosure stated, "If you sell or transfer this property to another person, your lender will allow, under certain conditions, this person to assume this loan on the original terms."

12. In reality, the loan was not assumable under any condition – a fact Rocket and Schwab concealed from Bunnell.

13. On May 13, 2021, Zachary Bunnell refinanced his home and closed the loan with Quicken Loans, LLC (Rocket). Franz Bunnell and Cheryl Bunnell co-signed the loan.

14. Franz Bunnell took part in the May 13, 2021 loan closing. Franz signed the Closing Disclosure (**Exhibit A**), the Fixed/Adjustable-Rate Rider, the Planned Unit Development Rider, and the Deed of Trust Renewal and Extension. Franz also submitted the loan application and signed a Signature/Name Affidavit. These actions show his direct involvement in the business transaction leading to the mortgage.

15. Zachary Bunnell, the homeowner, also took part in the closing. He signed the Closing Disclosure, the Fixed/Adjustable-Rate Rider, the Planned Unit Development Rider, and the Deed of Trust Renewal and Extension Exhibit. Zachary also submitted the loan application and signed a

Signature/Name Affidavit. His actions were integral to completing the mortgage transaction.

16. On or about April 20, 2024, Zack Bunnell decided to sell his home and identified an interested buyer, provided the existing mortgage could be assumed.

17. On April 23, 2024, Franz Bunnell contacted Rocket to start the loan assumption process. The Rocket representative took the details and advised they would reply to him.

18. On April 23, 2024, Rocket's Executive Servicing Escalation Specialist, Amber Curry, emailed stating that assumption is not an option for this loan based on Charles Schwab guidelines and no exceptions will be granted. The wording on the closing disclosure states 'may allow under certain conditions' and in this case, the condition is the investor guidelines that we are required to follow. The email says, "it is possible for investors to update their guidelines."

19. On April 23, 2024, Franz Bunnell emailed Rocket (Amber Curry) asking for a copy of the guidelines on which Rocket based their denial.

20. On April 24, 2024, Rocket (Amber Curry) responded by email, denying the request for a copy of their guidelines.

21. The same day, Franz Bunnell met in person with Charles Schwab VP Assistant Branch Manager (Sarah Jo Brockhouse) and emailed a request for help with the Rocket assumption issue.

22. On May 1, 2024, Charles Schwab (Diego Berrocal) responded by email, suggesting their efforts to influence Rocket were unsuccessful.

23. The May 1, 2024 email from Charles Schwab (Diego Berrocal) included an excerpt from their Rocket contact (Chris Feliciano) stating, "we never allow for assumption of loans, but the verbiage is in the loan documents to support selling the loan to another bank."

24. On May 2, 2024, Franz Bunnell and Diego Berrocal (Charles Schwab Bank) discussed the next steps by phone. Diego Berrocal agreed to escalate the issue within Charles Schwab Bank's higher management level.

25. On or about May 8, 2024, Charles Schwab Bank (Diego Berrocal) called back, suggesting they had taken the issue as far as they could and that Rocket would not budge.

26. On May 13, 2024, Franz Bunnell asked for a complete copy of the Rocket email referenced in Charles Schwab Bank's May 1, 2024, email.

27. On May 14, 2024, Charles Schwab Bank Rep (Diego Berrocal) responded that compliance rules prohibited sharing Rocket's May 1, 2024 email.

6

28. In a subsequent phone call on May 21, 2024, the Charles Schwab Bank Rep (Diego Berrocal) named Chris Feliciano as the author of the May 1, 2024, Rocket email.

29. In a letter to Ren Crochet of the Department of Savings and Mortgage Lending (State of Texas) dated June 20, 2024, Rocket Mortgage stated that their team correctly advised Franz Bunnell that "per CSB's current investor guidelines, assumptions are not allowed."

30. In the same June 20, 2024 letter to Ren Crochet, Rocket Mortgage clarified that the Closing Disclosure "does not provide a guarantee that an assumption loan will be possible, but that it would be allowed by the Lender so long as certain conditions are met."

31. Rocket Mortgage's June 20, 2024 letter also confirmed that Charles Schwab Bank (CSB) was the loan investor and that "each investor has specific guidelines that we as the Lender are required to follow as it pertains to the servicing of the loan, in addition to Lender guidelines, state guidelines, and federal guidelines."

32. Further, in the June 20, 2024 letter, Rocket Mortgage states,

While we sincerely apologize if Mr. Bunnell felt the verbiage on the Closing Disclosure was ambiguous, we do not agree with his assertions that he was promised or guaranteed the loan would be assumable post-close. The Closing Disclosure clearly states that an assumption may be permitted under certain conditions, and the condition of investor approval was not met for his loan.

7

33. Rocket also stated, "We further disagree that compensation is warranted and deny Mr. Bunnell's request for funds, accordingly."

34. Rocket refused, stating that the loan was not assumable and that it never intended to allow assumptions, and Rocket's disclosures were false and inaccurate.

35. On July 9, 2024, Charles Schwab Bank (Sarah Jo Brockhouse) provided a new justification for denying the assumption request. (Here, the email stated two new conditions: 1. Assumptions are only allowed during the adjustable-rate period (after June 2031). 2. Assumptions are only considered for non-performing loans with a qualifying Successor-In-Interest.

36. Finally, Rocket stated, "As such, we are unable to approve a loan assumption at this time."

37. Rocket and Schwab sold mortgages with assumability provisions while enforcing internal policies that made assumption impossible in every case. Rocket's disclosures stating that loans were "assumable under certain conditions" were false because no borrower could ever meet the "conditions" for assumption. Rocket affirmatively misrepresented the truth, misleading borrowers into believing their loans had a benefit that never existed.

## D. Class Certification Requirements:

### 1. The class.

38. Bunnell sues on behalf of himself and as assignee of his son Zack, and all others similarly situated under Federal Rules of Civil Procedure 23(a) and 23(b)(3). This action seeks statutory damages as provided under the Truth in Lending Act (TILA), 15 U.S.C. § 1640(a)(2)(B), which expressly allows class actions for statutory damages.

39. The proposed class is defined as:

> All individuals in the United States who obtained a mortgage loan originated by Rocket Mortgage, for which the federally required Loan Estimate and/or Closing Disclosure stated the loan was "assumable," and which loan was at any time sold or transferred to Charles Schwab Bank.

Most mortgagors are probably unaware that Charles Schwab Bank had any authority over their mortgages.

40. Recognizing that TILA caps class action damages at the lesser of $1,000,000 or 1% of the defendant's net worth (15 U.S.C. § 1640(a)(2)(B)), Bunnel proposes structuring the class definition and any subsequent distribution plan to prevent the per-claimant recovery from being so minimal as to make the statutory remedy ineffective or wasteful. This approach aligns with judicial precedents complaining about certifying classes where the statutory cap would result in *de minimis* individual recoveries.

### 2. Numerosity (Rule 23(a)(1))

41. The class comprises thousands nationwide borrowers who received the same allegedly misleading disclosures on loan assumability from Rocket Mortgage. The number of class members makes individual joinder impracticable. In 2024, Rocket wrote 350,000–380,000 mortgages.

### 3.  Commonality (Rule 23(a)(2))

42. There are multiple common legal and factual questions central to this action, including:

a.  Whether Rocket's disclosures misrepresented loan assumability.

b.   Whether that misrepresentation violates TILA (specifically § 1638(a)(13)).

c.  Whether Charles Schwab Bank is liable as an assignee for the on-its-face violation under 15 U.S.C. § 1641.

d.  The measure of damages under 15 U.S.C. § 1640(a)(2)(B).

43. These questions do not vary individually; they will be resolved with the same evidence and legal arguments for everyone. Rocket used standard form documents (the Loan Estimate and Closing Disclosure are uniform forms under federal law) – thus, the "Assumption" section was identically worded for all class members. The common issues (a)–(d) meet Rule 23(a)(2)'s requirements, showing there is a "common contention...capable of classwide resolution"

### 4. Typicality (Rule 23(a)(3))

44. Bunnell's claims are typical of the proposed class because Rocket gave all class members the same inaccurate mortgage disclosures. Schwab invested in similar mortgages and required Rocket to follow its mortgage guidelines.

45. Bunnell's and every class member's claims "arise from the same event or practice or course of conduct" (the false TRID disclosure) and are based on "the same legal theory" (TILA violation), meeting the typicality standard. No unique defenses or facts would make Bunnell atypical.

### 5. Adequacy (Rule 23(a)(4))

46. Bunnell will fairly and adequately represent the interests of the class. He has hired competent counsel experienced in consumer protection and class action litigation. Bunnell and other class members have no known conflicts of interest, and he is intensely interested in the outcome, ensuring vigorous prosecution of the claims. Bunnell has shown initiative by pursuing the matter with regulators (as shown by the letter to the Texas Department of Savings and Mortgage Lending). Failing to obtain relief, he hired counsel and will continue to advocate vigorously for the class.

### 6. Predominance and Superiority (Rule 23(b)(3))

47. The common issues identified above predominate over any individual issues because each class member received the same false TRID disclosures from Rocket regarding loan assumability. The legal and factual questions

surrounding Rocket's TILA violations and Schwab's assignee liability apply uniformly to all class members and can be resolved class-wide. No individualized inquiry is needed to adjudicate liability or statutory damages (which in TILA are formulaic).

48. A class action is the superior method for adjudicating this controversy because:

   a. Through TILA, Congress expressly allows class actions for statutory damages, recognizing them as an efficient mechanism for enforcing consumer protections.

   b. Class-wide adjudication is the only practical way to distribute the limited statutory damages cap, which is the lesser of $1,000,000 or 1% of each defendant's net worth under 15 U.S.C. § 1640(a)(2)(B). Without a class action, individual claims would be economically unfeasible, and Rocket and Schwab's misconduct would go unremedied—undermining the statute's purpose of protecting consumers.

   c. A single class action promotes judicial economy, ensures consistent adjudication, and prevents conflicting rulings on identical legal issues.

49. Bunnell seeks certification of the class, appointment as class representative, and appointment of his counsel to ensure the class's interests are adequately represented and protected.

## E. Tolling of the statute of limitations

50. Rocket and Schwab deprived consumers of the accurate information Congress mandated, denying them the benefit of a bargain they were promised on paper but never in reality.

12

51. Rocket's false disclosure was inherently unknowable by borrowers, who had no reason to suspect the statement 'assumable' was untrue until they pursued an assumption. Neither Rocket nor Schwab corrected the misrepresentation. The statute of limitations on TILA claims was tolled for Bunnell and the class until the discovery of the truth. Bunnell's April–May 2024 communications with Rocket/Schwab, which finally confirmed the loan was not assumable, occurred less than one year before this filing, making the action timely.

**F. Count one – violation of TILA (15 U.S.C. § 1601 et seq.) (against Rocket Mortgage)**

52. Bunnell incorporates all preceding allegations.

53. Congress authorized the Federal Reserve Board ("FRB" or "Board") to issue regulations granting it broad authority to effectuate the purposes of TILA; that authority is now delegated to the Bureau of Consumer Financial Protection ("Bureau"). 15 U.S.C. § 1604(a).

54. The loan was subject to 15 U.S.C. § 1638 ("Transactions Other than Under an Open End Credit Plan.")

55. Under TILA, 15 U.S.C. § 1638(a)(13), Rocket had to reveal whether the loan was assumable and the conditions of such assumability.

(a) Required disclosures by creditor

For each consumer credit transaction other than under an open end credit plan, the creditor shall reveal each of these items, to the extent applicable:

***

(13) In any residential mortgage transaction, a statement indicating whether a subsequent purchaser or assignee of the consumer may assume the debt obligation on its original terms.

15 U.S.C.A. § 1638 (a)(13).

56. Rocket gave Bunnell a Loan Estimate (LE) under 12 C.F.R. § 1026.37(m)(2) stating that the loan was "assumable" and a Closing Disclosure (CD) under 12 C.F.R. § 1026.38(l)(1) repeating that the loan was "assumable."

57. The Closing Disclosure stated: "If you sell or transfer this property to another person, your lender will allow, under certain conditions, this person to assume this loan on the original terms."

58. On April 23, 2024, Bunnell contacted Rocket to begin the loan assumption process. Rocket denied the request, stating that "assumption is not an option for this loan based on Charles Schwab guidelines." Bunnell made additional attempts, but as the facts show, neither Rocket nor Schwab ever considered allowing an assumption under any condition.

59. Rocket's statement, "your lender will allow, under certain conditions, [a third party] to assume this loan on the original terms," is a paradigmatic misleading disclosure: it suggests a benefit/option that did not exist.

60. Bunnell repeatedly sought an assumption over the next three months, but neither Rocket nor Schwab allowed it. Under no circumstance could Bunnell's purchaser assume the loan on its original terms.

61. The only reason Rocket and Schwab have given for the assumability language in Rocket's loan documents is to help sell the loan to another bank. That claim is false.

62. Rocket and Schwab benefit from representing that "your lender will allow, under certain conditions, this person to assume this loan on the original terms" because it makes their mortgages more marketable and more closely resemble an FHA and VA mortgage.

63. Rocket's disclosures in the Loan Estimate and Closing Disclosure were false and violated 15 U.S.C. § 1638(a)(13). It is a well-established principle that a misleading disclosure is as much a violation of TILA as a failure to disclose. TILA can be violated by technically complete disclosures that is misleading.

64. Rocket's disclosure at closing was false because, given Schwab's standing policy, the loans had no real assumability.

15

65. Bunnell and class members could not have discovered the falsity of Rocket's required disclosure until they attempted an assumption or received written confirmation that assumption was not an option. Rocket and Schwab concealed the truth from borrowers, and the violation was self-concealing because there was no reason for borrowers to suspect misrepresentation until they acted on the disclosure. The statute of limitations for the class is tolled until discovery of the violation.

66. Under 15 U.S.C. § 1640(a), Rocket is strictly liable for these disclosure violations. No proof of intent, negligence, or reliance is required.

67. Class-wide statutory damages are allowed under 15 U.S.C. § 1640(a)(2)(B) because Rocket's violations affected the entire class.

68. Under 15 U.S.C. § 1640(a)(2)(B), statutory damages for the class are capped at the lesser of $1,000,000 or 1% of Rocket's net worth.

69. Bunnell and the class also have the right to recover reasonable attorney's fees and costs under 15 U.S.C. § 1640(a)(3).

## G. Count two – assignee liability under TILA (15 U.S.C. § 1641) (against Charles Schwab Bank)

70. Bunnell incorporates all preceding allegations.

71. Charles Schwab Bank is liable under TILA, 15 U.S.C. § 1641, as an assignee of the loan because it bought the loan from Rocket knowing that the Loan Estimate and Closing Disclosure stated the mortgage was assumable.

72. The Loan Estimate and Closing Disclosure were required TILA disclosures and stated that the loan was "assumable."

73. Under 15 U.S.C. § 1641(a), Schwab is liable for TILA violations that are apparent on the face of the disclosure statement, including the assumability representation. Schwab made guidelines that prohibited any consideration of assumability.  Schwab not only could identify the violation from the disclosure, it caused the violation.

74. Charles Schwab Bank directly caused a TILA violation under 15 U.S.C. § 1641(a) by directing Rocket to deny the assumption request, stating that assumptions were prohibited under its investor guidelines. Schwab was not merely a passive assignee but knowingly imposed a policy contradicting the assumability disclosures given to borrowers.

75. On May 1, 2024, Charles Schwab Bank confirmed that Rocket "never allows for assumption of loans" and that the assumability provision was included only to help sell the loan to another bank.

76. Under TILA, 15 U.S.C. § 1640(a), Charles Schwab Bank is strictly liable for these violations. No proof of intent, negligence, or reliance is required.

77. Schwab is liable for its conduct under 15 U.S.C. § 1641(a) and (e). The damages for its conduct are set under 15 U.S.C. § 1640(a)(2)(B), which refers to the statutory damages for the class being capped at the lesser of $1,000,000, or 1% of Charles Schwab Bank's net worth.

78. Bunnell and the class are entitled to recover reasonable attorney's fees and costs under 15 U.S.C. § 1640(a)(3).

## H. Relief requested

Bunnell and the class respectfully request that this court:

    a. Certify the class under Federal Rule of Civil Procedure 23(b)(3) and appoint Bunnell as Class Representative and Bunnell's counsel as Class Counsel;

    b. Find Rocket liable for TILA violations under 15 U.S.C. § 1640;

    c. Find Charles Schwab Bank liable for TILA violations under 15 U.S.C. § 1641;

    d. An Award:

        i. Statutory damages for the class under 15 U.S.C. § 1640(a)(2)(B), capped at the lesser of:

            a. $1,000,000, or

            b. 1% of Rocket's net worth;

        ii. Attorney's fees, litigation expenses and costs under 15 U.S.C. § 1640(a)(3);

    e. Award pre- and post-judgment interest as permitted by law; and

    f. Grant such other and further relief as this court considers and proper.

Date: 12 March 2025.

Respectfully submitted,


By: _____*/s/ Scott M Clearman*_____
      Scott M. Clearman
      Texas Bar No. 04350090
      THE CLEARMAN LAW FIRM PLLC
      2335 Richton St.
      Houston, Texas 77098
      Telephone: 713-304-9669
      Email: scott@clearmanlaw.com

# Closing Disclosure

*This form is a statement of final loan terms and closing costs. Compare this document with your Loan Estimate.*

| Closing Information | | Transaction Information | | Loan Information | |
|---|---|---|---|---|---|
| Date Issued | 05/13/2021 | Borrower | Zachary Alexander Bunnell | Loan Term | 30 years |
| Closing Date | 05/13/2021 | | | Purpose | Refinance |
| Disbursement Date | 05/18/2021 | | 5015 Lehman Oaks Dr | Product | 10 yr. /6 mo. Adjustable Rate |
| Settlement Agent | Amrock, LLC | | Houston, TX 77018-2601 | | |
| File # | 70229523 | Lender | Quicken Loans, LLC | Loan Type | ☒ Conventional ☐ FHA |
| Property | 5015 Lehman Oaks Dr | | | | ☐ VA ☐ _____ |
| | Houston, TX 77018-2601 | | | Loan ID # | 3476474731 |
| Appraised Prop. Value $ 325,000 | | | | MIC # | |

## Loan Terms

| | | Can this amount increase after closing? |
|---|---|---|
| **Loan Amount** | $ 254,666 | **NO** |
| **Interest Rate** | 2.525% | **YES** • Adjusts **every 6 months** starting in year 11 • Can go **as high as 7.525%** in year 11 • See AIR Table on page 4 for details |
| **Monthly Principal & Interest** *See Projected Payments below for your Estimated Total Monthly Payment* | $ 1,009.56 | **YES** • Adjusts **every 6 months** starting in year 11 • Can go **as high as $1,534** in year 11 |

| | | Does the loan have these features? |
|---|---|---|
| **Prepayment Penalty** | | **NO** |
| **Balloon Payment** | | **NO** |

## Projected Payments

| Payment Calculation | Years 1-10 | Year 11 | Year 12 | Years 13-30 |
|---|---|---|---|---|
| Principal & Interest | $1,009.56 | $1,054 min $1,534 max | $1,054 min $1,534 max | $1,054 min $1,534 max |
| Mortgage Insurance | + 0 | + 0 | + 0 | + 0 |
| Estimated Escrow *Amount can increase over time* | + $638.05 | + $638.05 | + $638.05 | + $638.05 |
| **Estimated Total Monthly Payment** | $1,647.61 | $1,692-$2,172 | $1,692-$2,172 | $1,692-$2,172 |

| **Estimated Taxes, Insurance & Assessments** *Amount can increase over time\ See page 4 for details* | $ 829.72 a month | This estimate includes ☒ Property Taxes ☒ Homeowner's Insurance ☒ Other: HOA Dues *See Escrow Account on page 4 for details. You must pay for other property costs separately.* | In escrow? Yes Yes No |
|---|---|---|---|

## Costs at Closing

| **Closing Costs** | $ 10,408.57 | Includes $ 3,181.18 in Loan Costs +$ 7,227.39 in Other Costs - $ 0.00 in Lender Credits. *See page 2 for details.* |
|---|---|---|
| **Cash to Close** | $ 0.99 | Includes Closing Costs. *See Calculating Cash to Close on page 3 for details.* ☒ From ☐ To Borrower |

CLOSING DISCLOSURE
e162c6bd15f8f4a37f14e7bc8069beca
Wolters Kluwer Financial Services © 2015
05/13/2021 13:30:09 EDT



PAGE 1 OF 5 · LOAN ID # 3476474731

VMP6614D (1504).00

Exhibit A

Case 4:25-cv-01181    Document 1    Filed on 03/12/25 in TXSD    Page 21 of 22

# Additional Information About This Loan

## Loan Disclosures

### Assumption
If you sell or transfer this property to another person, your lender
☒ will allow, under certain conditions, this person to assume this loan on the original terms.
☐ will not allow assumption of this loan on the original terms.

### Demand Feature
Your loan
☐ has a demand feature, which permits your lender to require early repayment of the loan. You should review your note for details.
☒ does not have a demand feature.

### Late Payment
If your payment is more than  15  days late, your lender will charge a late fee of 5% of the monthly principal and interest payment.

### Negative Amortization (Increase in Loan Amount)
Under your loan terms, you
☐ are scheduled to make monthly payments that do not pay all of the interest due that month. As a result, your loan amount will increase (negatively amortize), and your loan amount will likely become larger than your original loan amount. Increases in your loan amount lower the equity you have in this property.
☐ may have monthly payments that do not pay all of the interest due that month. If you do, your loan amount will increase (negatively amortize), and, as a result, your loan amount may become larger than your original loan amount. Increases in your loan amount lower the equity you have in this property.
☒ do not have a negative amortization feature.

### Partial Payments
Your lender
☐ may accept payments that are less than the full amount due (partial payments) and apply them to your loan.
☒ may hold them in a separate account until you pay the rest of the payment, and then apply the full payment to your loan.
☐ does not accept any partial payments.
If this loan is sold, your new lender may have a different policy.

### Security Interest
You are granting a security interest in
5015 Lehman Oaks Dr
Houston, TX 77018-2601

You may lose this property if you do not make your payments or satisfy other obligations for this loan.

### Escrow Account
*For now,* your loan
☒ will have an escrow account (also called an "impound" or "trust" account) to pay the property costs listed below. Without an escrow account, you would pay them directly, possibly in one or two large payments a year. Your lender may be liable for penalties and interest for failing to make a payment.

| Escrow | | |
|---|---|---|
| Escrowed Property Costs over Year 1 | $7,656.60 | Estimated total amount over year 1 for your escrowed property costs: *Homeowners Insurance Property Taxes* |
| Non-Escrowed Property Costs over Year 1 | $2,300.04 | Estimated total amount over year 1 for your non-escrowed property costs: *Homeowner Association Dues* You may have other property costs. |
| Initial Escrow Payment | $5,104.35 | A cushion for the escrow account you pay at closing. See Section G on page 2. |
| Monthly Escrow Payment | $638.05 | The amount included in your total monthly payment. |

☐ will not have an escrow account because ☐ you declined it ☐ your lender does not offer one. You must directly pay your property costs, such as taxes and homeowner's insurance. Contact your lender to ask if your loan can have an escrow account.

| No Escrow | | |
|---|---|---|
| Estimated Property Costs over Year 1 | $0.00 | Estimated total amount over year 1. You must pay these costs directly, possibly in one or two large payments a year. |
| Escrow Waiver Fee | $0.00 | |

*In the future,*
Your property costs may change and, as a result, your escrow payment may change. You may be able to cancel your escrow account, but if you do, you must pay your property costs directly. If you fail to pay your property taxes, your state or local government may (1) impose fines and penalties or (2) place a tax lien on this property. If you fail to pay any of your property costs, your lender may (1) add the amounts to your loan balance, (2) add an escrow account to your loan, or (3) require you to pay for property insurance that the lender buys on your behalf, which likely would cost more and provide fewer benefits than what you could buy on your own.

## Adjustable Interest Rate (AIR) Table

| Index + Margin | 30 Day Average of SOFR Index (.01%) | + | 3 % |
|---|---|---|---|
| Initial Interest Rate | | | 2.525 % |
| Minimum/Maximum Interest Rate | | 3 % / | 7.525 % |
| **Change Frequency** | | | |
| First Change | | | Beginning of 121st month |
| Subsequent Changes | | | Every 6 months after first change |
| **Limits on Interest Rate Changes** | | | |
| First Change | | | 5 % |
| Subsequent Changes | | | 1 % |

CLOSING DISCLOSURE

Wolters Kluwer Financial Services © 2014


q03476474731 2342 530 0406

PAGE 4 OF 5 • LOAN ID # 3476474731

VMP664B (1407).00

RP-2021-274646
05/18/2021   ER   $146.00

**Return To:**
Document Management
Quicken Loans. LLC
1050 Woodward Ave
Detroit. MI  48226-1906

**Prepared By:**
Kristine M Haines
1050 Woodward Ave
Detroit, MI 48226-1906
(313)373-0000

70229523 *7232653*                    Deed of Trust                    3476474731

MIN: 100039034764747319

**Notice of Confidentiality Rights: If you are a natural person, you may remove or strike any or all of the following information from any instrument that transfers an interest in real property before it is filed for record in the public records: Your social security number or your driver's license number.**

**Definitions**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  **"Security Instrument"** means this document, which is dated     May 13, 2021     , together with all Riders to this document.

(B)  **"Borrower"** is Franz Bunnell, a married man and Cheryl Bunnell, his wife and Zachary Alexander Bunnell, a single man

Borrower is the grantor under this Security Instrument.

(C)  **"Lender"** is Quicken Loans, LLC

6120082985
TEXAS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services



Form 3044 1/01 (rev. 10/17)
VMP6A(TX) (1711).00
Page 1 of 21

q03476474731 0233 539 0121

RP-2021-274646